FILING FEE NOT PAID

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**
**(Eastern Division)**

| | |
|---|---|
| In Re:<br>LocatePLUS Holdings Corporation, et al.<br>Debtors | ) )<br>) MAR20'12 AM10:54 USB<br>)<br>)<br>) |
| Carl Green<br>    Plaintiff,<br><br>v.<br><br>Stephen S. Gray, Soley in his Capacity As Chapter 11 Trustee for the Debtors, CRG Partners, LLC, Brown Rudnick LLP LocatePLUS Holdings Corporation Acquisition Partners, Henry E. Knoblock III, John Nachef and Steven Russo and Individually and as managing members, Brain McHugh, Kenneth Kaiser, Blake Godbout, Geoffrey T. Chalmers, National Union Fire Insurance Company, Oakridge Insurance Services, Chartis, Inc., Livingston & Hayes, P.C., Kevin F. Howley, William W. Wood, John Latoralla, James Fields, Sonia Bejjani, Ralph Caruso, David Skerrett, Patrick Murphy, and Christian Williamson<br>                    Defendants. | )<br>) Chapter 11<br>)<br>) Case No. 11-15791(JNF)<br>)<br>) Jointly Administered<br>)<br>)<br>) Adversary proceeding<br>) NO. 11_____(JNF)<br>)<br>) JURY TRIAL DEMANDED<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**VERIFIED COMPLAINT**

Plaintiff, Carl Green ("Green") hereby submits this verified complaint ("complaint") against

Stephen S. Gray, solely in his capacity as Chapter 11 Trustee for the Debtors, CRG Partners,

LLC, Brown Rudnick LLP, LocatePLUS Holdings Corporation Acquisition Partners and

managing member and attorney Henry E. Knoblock III, John Nachef, Steven Russo, Brain

McHugh, Kenneth Kaiser, Blake Godbout, Geoffrey T. Chalmers, National Union Fire Insurance

Company, Oakridge Insurance Services, Chartis, Inc. Livingston & Haynes, Kevin F. Howley,

William W. Wood, John Latoralla, James Fields, Sonia Bejjani, Ralph Caruso, David Skerrett,

Patrick Murphy, and Christian Williamson.  In support of this Complaint, Green respectfully

states as follows:

1.   Green hereby requests a jury trial on all claims triable by jury


## Nature of Complaint

2.   As described in more detail below this action arises from the efforts of the Trustee, CRG

Partners, LLC Brown Rudnick LLPS mismanagement of the estates including Dataphant

to de minims status and the assertion or possession of an economic interest that lessens

the value of the bankruptcy estate(s) including fraudulent transfer to LocatePLUS

Holdings Corporation Acquisition Partners ("LPHCAP") and managing member attorney

Henry E. Knoblock III, Steven Russo, John Nachef. Claims against the Trustee, National

Union Insurance Company, and Chartis, Inc. for Injunctive Relief and for cost and

expenses. Claims against Brain McHugh, Kenneth Kaiser, Blake Godbout, Geoffrey T.

Chalmers, National Union Fire Insurance Company, Oakridge Insurance Services,

Chartis, Inc. for Civil Conspiracy. Claims against Livingston & Haynes, Kevin F.

Howley,  and William W. Wood for accounting malpractice. Directors and Officers, John

Latoralla, James Fields, Sonia Bejjani, Ralph Caruso, David Skerrett, Patrick Murphy,

and Chistian Williamson for negligence or breach of Fiduciary Duty.

3.   This action further arises as a result of the security interest in the collateral due to Green

being a secured creditor of the YA Global's Debenture dated March 2, 2007 based on a

valid contract negotiated with YA Global.  The formation of the contract was based on the

objective intent of the parties as expressed outwardly in their words and deeds and not merely in the form agreement had taken. The parties freely obligated themselves in an informal manner, and there was partial performance by Green that YA Global accepted. All essential terms of the contract had been agreed upon. Wherefore the funds securing the Debenture as being held by the Trustee belongs to Green and the Trustee has no rights or authority to access, use or surcharge the funds or pay a breakup fee to Inflections, LLC as an administrative expense. Green seeks a Constructive Trust on all funds less the $2.8 million the Gulabtech settlement calls to be paid to Gulablech until this matter can be resolved.

4. On          Green filed a proof of claim asserting (i) a secured claim in the aggregate amount of 3 million (consisting of principal) plus interest in accordance with the Bankruptcy Code 506(b) and (ii) a lien on all of the Debtors assets (the "collateral").

5. On February 20, 2012 Green executed a plan Support Agreement with Gulabtech, LLC. The Amended Plan includes a provision for Gulabtech reaching a settlement with the Trustee on some or all disputes, provided, however, that Gulabtech shall comply (and shall not agree with the Trustee not to comply) with the terms of the Plan Support Agreement.

## Parties

6. The Plaintiff is the secured debt holder of the March 20, 2007 Debenture issued by YA Global, a shareholder of the Debtors, an Agent of the Debtor, and the chairman of the board with a principal office located at 601 Carlson Parkway, suite 1050, Minnetonka, MN 55305.

7. Upon information and belief, Defendant Stephen Gray was duly appointed as Chapter 11

Trustee of each Debtor on July 15, 2011 in these Chapter 11 cases with a principal office located at 2 Atlantic Avenue, 4th floor Boston, MA 02110.

8.  Upon information and belief Defendant CRG Partners Group, LLC ("Trustees Firm") with a principal office located at 2 Atlantic Avenue, 4th floor Boston, MA 02110.

9.  Upon information and belief, Defendant Brown Rudnick LLP, is counsel and a professional of the Trustee with a principal office located One Financial Center, Boston, MA 02111.

10. Upon information and belief Defendant LocatePLUS Holdings Company Acquisition Partners ("LPHCAP") acquired assets of the Debtors has its principal location at 100 Cummings Center, Beverly, MA 01915.

11. Upon information and belief, Defendant Henry E. Knoblock, III is an attorney and managing member of LPHCAP with a principal location at 20 William Street, suite 130 Wellesley, MA 02481.

12. Upon information and belief, John Nachef is an individual and a managing member of LPHCAP with a location of 1744 Granada Drive, Marco Island, FL 34145.

13. Upon information and belief, Steven Russo is an individual and a managing member of LPHCAP with a location of 6160 N. Cicero, Chicago, IL 606646.

14. Upon information and belief, National Union Fire Insurance Company is a company with a location of 175 water Street, New York, NY 10038.

15. Upon information and belief, Oakridge Insurance Service is a company with a principal location of 580 Cottage Grove Road, suite 101, Bloomfield, CT 06002.

16. Upon information and belief, Chartis, Inc. is a company with a principal location of 175 Water Street, New York, NY 10038.

17. Upon information and belief, Brain McHugh is an individual with an address of 5603 Tanager Lake Rd., Lithia, FL 33547.

18. Upon information and belief, Kenneth Kaiser is an individual with an address of 20 Greenwood Rd., Hopkington, MA 01748.

19. Upon information and belief, Geoffrey Chalmers is an individual with an address of 33 Broad Street, 11th floor, Boston, MA 02109.

20. Upon information and belief, Blake Godbout is an individual with an address of 33 Broad Street, 11th floor, Boston, MA 02109.

21. Upon information and belief, Sonia Bejjani is an individual with an address of 4602 Deerfield Circle, Peabody, MA 01960.

22. Upon information and belief, Ralph Caruso is an individual with an address of 320 Charger St., Revere, MA 02151.

23. Upon information and belief, David Skerrett is an individual with an address of 1143 Main Street, Dunstable, MA 01827.

24. Upon information and belief, Patrick Murphy is an individual with an address of 12 Maple Ave., Avon, MA 02322.

25. Upon information and belief, Chistian Williamson is an individual with an address of 2351 E. Calle Sin Controversia, Tucson, Az 85718.

26. Upon information and belief, Kevin F. Howley is an individual with an address of 343 East St., Wrentham, MA 02093.

27. Upon information and belief, William W. Wood is an individual with an address of old Meeting House Road, Townsend, MA 01469.

28. Upon information and belief, Livingston & Haynes, P.C. is a business with a principal

location of 40 Grove Street, Wellesley, MA 02482.

## Jurisdiction and Venue

29. The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157

    and 1334.

## Factual Allegations

30. The Debtors provided various types of public and private data to business and

    credentialed clients throughout the United States.

31. LocatePLUS Holdings Corporation is a publicly traded company that owns one hundred

    percent (100%) of the equity interest of the Debtors.

32. On March 20, 2007 LocateFLUS Holdings Corporation issued a secured convertible

    Debenture in the original principal amount of $3,000,000 to Cornell Capital Partners, L.P.

    n/k/a YA Global Investments, L.P. (" YA Global").

33. By its terms, the Original Debenture matured on March 19, 2010.

34. Green and YA Global negotiated a purchase of the YA Global Debenture.

35. The terms where agreed to by Greens through counsel after review and diligence by

    Green.

36. YA Global did not expressly reserve the right to be bound only by a formal signed

    writing.

37. Upon information and belief on or about December 30, 2008 LocatePLUS Holdings

    Corporation entered into a Consulting Adversary Agreement (the "Consulting

    Agreement") with ACE and its president Thomas Murphy ("Murphy"), wherein ACE

    agreed to use its reasonable best efforts to assist the Debtors in identifying potential

    sources of capital, merger or acquisition opportunities or strategic partnership, joint

venture, customer or client opportunities.

38. Upon information and belief and pursuant to the Consulting Agreement, ACE and
Murphy were and openly held themselves out to be agents of and advisors to the Debtors.

39. The Securities and Exchange Commission ("SEC") initiated action against LocatePLUS
Holdings Corporation which forced the Debtor to work for a solution to resolve this legal
action.

40. In late 2010 Green started negotiation with ACE and Murphy on behalf of LocatePlus
Holdings Corporation and in early 2011, Green entered into contractual relationships with
ACE and Murphy as an advisor and gave a three month retainer of $5,000 upon execution
of the agreement and $95,000 was due upon successful efforts to acquire the original
Debenture and restructure the Debtors.

41. Upon information and belief, the Debtors became conflicted and came up with a
fraudulent transfer scheme using the United States Bankruptcy Court to carry out the
scheme which included the appointment of a Trustee.

42. On June 16, 2011 each of the Debtors filed a voluntary petition for relief with the court
under Chapter 11 of the Bankruptcy Code.

43. On July 15, 2011 the court approved the appointment of Stephen S. Gray as Trustee for
the Debtors [Docket No. 79].

**Claims for Relief**

**Count I**
**Mismanagement of the estate(s)**
**(Against Trustee, CRG Partners and Brown Rudnick LLP)**

44. Green repeats and re-alleges the foregoing paragraphs, which are incorporated by
reference as if set forth fully herein.

45. Upon information and belief Stephen S. Gray, CRG Partners, LLC ("CRG Partners") and Brown Rudnick LLP ("Brown Rudnick") asserts or posses an economic interest that lessens the value of the bankruptcy estate(s).

46. The Trustee, CRG Partners and Brown Rudnick are seeking to be paid more than one million dollars for services of little or no value.

47. The Trustee and his firm marketed and Brown Rudnick counseled, advised and petitioned the court for the sale of the estate(s) assets for their own benefit to the prejudice of creditors.

48. The sale of the assets created a meaningful incentive for the Trustee, CRG Partners and Brown Rudnick to act contrary to the best interest of the estate(s) and its creditors – an incentive sufficient to  place creditors at more than acceptable risk or the reasonable perception of one based on the programs the Trustee, CGR Partners and Brown Rudnick adopted that inevitably and foreseeably, generated professional fees disproportionate to the size of the case and any possible benefit to creditors.

49. Courts interpreting 101 (14) have requested that Trustees and professionals be free of any "scintilla of personal interest" which might impact the Trustee or professional decisions in estate matters.

50. The Trustee and professionals are expected to tender "undivided loyalty" and provide, "untainted advice" yet the Trustee and his professionals have refused to have undivided loyalty and give untainted advice concerning LPHCAP.

51. Upon information and belief the Trustee and his professional orchestrated and allowed the sale of certain of the Debtors assets to LPHCAP for one hundred thousand dollars ($100,000) that generate revenue of one million five hundred thousand ( $1.5 million).

52. Upon information and belief the Trustee, CRG Partners and his professional worked directly with LPHCAP and specifically its managing member Henry E. Knoblock, III. Murphy put together, originally organized and/or brought the parties together to create LPHCAP Green refused membership due to Murphy control over the group.

53. The Trustee though his professional sued Murphy and obtained a default judgment in these bankruptcy proceedings.

54. Upon information and belief the Trustee and his professional allowed attorney Henry E. Knoblock, III to continue to represent the LPHCAP and as a managing member, structure the bid, purchase Debtor assets at unreasonable prices and structure the asset purchase agreement contrary to the bidding order and procedures and the best interest of the estate(s).

55. Upon information and belief the Trustee through and with his professionals contracted with LPHCAP through Henry E. Knoblock, III as its managing member to share office space with the Debtors and use of the Debtors assets and retained no employees or personnel to supervise such actions or operations.

56. Upon information and belief the Trustee and his professionals gave LPHCAP control of the Debtor.

57. Upon information and belief the Trustee and his professionals worked with LPHCAP and specifically managing member attorney Henry E. Knoblock, III to the benefit of the Trustee to retain certain litigation claims and pursue certain litigation claims against Gulabtech even though Murphy orchestrated the entire scheme among other Officers, Directors and Advisors to the Debtors and indirectly controls or has control over the group.

58. Upon information and belief the Trustee and his professionals knew of the relationship between Murphy, LPHCAP, and managing member Henry E. Knoblock, III or should of known of the relationships with Murphy and the divided loyalty and tainted advice such relationships required.

59. Upon information and belief the Trustee and his professionals allowed their loyalty to be divided and advice to be tainted by LPHCAP and its managing member Henry E. Knoblock, III in an effort to pursue legal claims against Gulabtech and retain or secure litigation future litigations claims on behalf of the estate(s).

60. LPHCAP has contracted with the Trustee to retain these litigation claims as part of its reorganization plan of the debtor which is co-sponsored by the Trustee for substantial ongoing fees to the Trustee and his professionals.

61. Upon information and belief the Trustee and his professionals "interest is materially adverse to the estate."

62. Upon information and belief the phrase "interest materially adverse to the estate" is not defined in the code.

63. Upon information and belief the courts interpret it as "the possessing or asserting of any economic interest that would create either an actual or potential dispute in which the estate is a rival claimant or possessing a predisposition under circumstances that render such a bias against the estate real."

64. Upon information and belief the court of appeals of this circuit examines whether the targeted interest creates a "meaningful incentive to act contrary to the best interest of the estate(s) and its creditors – an incentive sufficient to place those parties at more than acceptable rise – or the reasonable perception of one." The test is neither subjective, nor

significantly influenced by the court-appointed professional's protestations of good faith;

… but contemplates an objective screening for even the appearance of impropriety."

65. The Trustee asked the court to reject Greens bid of $1,000 for the Dataphant assets at the objection hearing to the asset sales.

66. No other parties bid on the Dataphant assets and they have been reduced to de minims status.

67. The deposit has been return by the court alleging the Dataphant assets were sold at the sale.

68. The Trustee has refused to pursue or close the Dataphant sale with Green only to the extent of signing a nondisclosure agreement claiming it is a waste of his time to allow Green to inspect the assets for a higher bid on behalf of the estate.

69. Upon information and belief, complete denial of fees is more than proper as herein "[W]hen injury to the debtor's estate occurs."

70. Upon information and belief, the Trustee and his professional from the commencement of their employment by virtue of information requested and provided by Green of Murphy and had conversations that indirectly became LHPCAP.

71. Upon information and belief an investigation is one of the central duties as Trustee and of the professionals to the Trustee.

72. Upon information and belief by virtue of the relationship with LPHCAP or indirectly Murphy and managing member attorney Knoblock, III, the Trustee and his professionals are not free of personal interest.

73. Upon information and belief, the Trustee and his Professional have had a significant actual conflict of interest from the beginning of there representation do to their

relationship with LPHCAP and indirectly Murphy and attorney Henry E. Knoblock, III that permeates these entire proceedings.

74.  The connection is not remote, but rather significant and irreconcilable with their fiduciary duties to the Debtor's estate.

75.  Upon information and belief the statute imposes upon the Trustee and his professionals the duty to make diligent inquiry concerning conflicts, and they refused to do so with respect to LPHCAP and indirectly Murphy and managing member Henry E. Knoblock, III.

WHEREFORE, the Plaintiff seeks the following relief:


## Count II
## Injunctive Relief, Cost and Fees
### (Against Trustee/Estate, National Union Fire Insurance Company, and Chartis, Inc.)

76.  Green repeats and re-alleges the foregoing paragraphs, which are incorporated by reference as if set forth fully herein.

77.  LocatePlus Holdings Corporation is an Over The Counter Bulletin Board (OTCBB) it has very little regulations. Companies trade here if they stay current in their financial statements.

78.  Background searches are made on the company's officers and Directors, to locate any SEC, NASD, or State Regulatory Violations.

79.  Regulation S-K Item 401 requires public companies to provide detailed information regarding its directors, executive officers, significant employees, promoters and control persons.

80. Item 401 requires the identification of directors, experience, qualifications, attributes or

skills that led the registrant's board to conclude that the individual should serve on the

board of directors.

81. The SEC did not enumerate particular skills that should be considered in reaching this

conclusion.

82. Green submitted a resume and/or biography that contains information regarding his

knowledge, experience and skills that caused the board to determine that he should serve

as director for the company on an individual basis.

83. On July 6, 2011, at a continuation of the July 5, 2011 board meeting, the Board of

Directors appointed John Nachef to fill the term of departed director James Ahearn (who

resigned on May 12, 2011).

84. Thereafter, the Board accepted George Isaac's voluntary resignations and Anthony

Spatorico's resignations and appointed Carl Green to the Board of Directors of

LocatePlus Holdings Corporation.

85. The 8-K for LocatePlus Holdings Corporation appointing Carl Green to the board of

directors was filed with the SEC on July 11, 2011.

WHEREFORE, plaintiff seeks the following relief:

(1) Injunctive relief from the restraining order supported by the Trustee.

(2) Costs for bringing this action and all other efforts in these matters.

(3) Expenses for all efforts in these matters.


**Count III**
**Imposition of a Constructive Trust**
**(Against funds held by Trustee, Employment Screening Profiles, Inc., Worldwide**
**Information, Inc.)**

86. Green repeats and re-alleges the foregoing paragraphs, which are incorporated by

reference as if set forth fully herein.

87. Green through his agents negotiated a purchase of the YA Global Debenture.

88. The terms where agreed to by Green through his counsel after review and doing due diligence.

89. The parties intended to be bound by the unexecuted contract.

90. The formation of the valid contract was based on the objective intent of the parties as expressed outwardly in there words and deeds and not merely in the form the agreement had taken.

91. The parties freely obligated themselves in an informal manner.

92. The parties' outward expressions demonstrate intent to be bound.

93. The parties did not intend to be bound only by a formal, signed writing.

94. YA Global did not expressly reserve the right to be bound only by a formal signed writing.

95. There was partial performance by Green that YA Global accepted.

96. All essential terms of the contract had been agreed upon.

97. The record as a while demonstrates factually sufficient evidence to support jury findings that the parties had reached an objective agreement on all essential terms of the transaction, and therefore intended to be bound.

98. A relationship with respect to the funds exist which subjects the person who holds title to the funds to an equitable duty to convey the funds to Green on ground that acquisition or retention of the funds would constitute unjust enrichment.

99. This is an action in equity.

100.      The funds are considered intangible property and/or liquidate assets such as bank

and investment accounts and may be held subject to a constructive trust.

101.       All rights in the funds was obtained by fraud, misrepresentation, or an abuse of an

influential or confidential relationship and under circumstances, such defendants should

not, according to the rules of equity and good conscience, hold and enjoy the funds so

obtained.

102.       The funds can be accurately and reliably traced to the wrongdoers by clear and

convincing evidence.


WHEREFORE, the Plaintiff seeks the following relief:

(1.) A declaration from the court that the trustee holds the funds securing the Debenture

for the benefit of Green

(2.) Employment Screening Profiles, Inc. for the benefit of Green

(3.) Worldwide Information, Inc. for the benefit of Green

(4.) A finding that the Trustee has no authority to access, use, or surcharge the funds;

(5.) A finding that any breakup fee to Inflections, LLC using the funds is denied.

(6.) A finding that Gulabtech is entitled to $2.8 million of the funds as part of the

settlement agreement with Green and/or the Trustee.


### Count IV
### Fraudulent Transfers
### (Against Trustee, LPHCAP, Henry E. Knoblock, III, John Nachef, and Steven Russo individually and as managing members of LPHCAP)


103.       Green repeats and re-alleges the foregoing paragraphs, which are incorporated by

reference as if set forth fully herein.

104.    The object of the conveyance is declared to be fraudulent because the object or

effect is to defraud Green, and/ or the intent with which it was made is to avoid a duty

and/or debt due by or incumbent upon the defendants making the transfer.

105.    A transfer was made and/or an obligation was incurred by the debtors and is

fraudulent as to Green, whether Green's claim arose before or after the transfer was made

or the obligation was incurred, because the Debtors made the transfers and/or incurred the

obligations including file for bankruptcy protection with actual intent to hinder, delay, or

defraud Green or without receiving a reasonably equivalent value in exchange for the

transfer or obligation.

106.    The Debtor(s) was engaged or was about to engage in a business or transaction for

which the remaining assets of the Debtor(s) were unreasonably small in relation to the

business or transaction.

107.    The Debtor(s) intended to incur, or believed or reasonably should have believed

that he or she would incur, debts beyond his or ability to pay as they became due.

108.    The transfer or obligation was to an insider.

109.    The Debtor retained possession or control of the property transferred after the

transfer.

110.    The transfer or obligation was disclosed or concealed.

111.    Before the transfer was made or obligation was incurred, the Debtor(s) had been

sued or threatened with suit.

112.    The transfer was of substantially all the Debtor(s) assets.

113.    The value of the consideration received by the debtor was reasonably equivalent

to the value of the asset transferred or the amount of the obligation incurred.

114.     The Debtor(s) was insolvent or became insolvent shortly after the transfer was

made or the obligation was incurred.

115.     The transfer occurred shortly before or shortly after a substantial debt was

incurred.

116.     The Debtor(s) transferred the essential assets of the business to a lienor who

transferred the assets to an insider of the Debtor(s).

100. Under the statute Green can show clear and convincing evidence that a transfer was

and fraud existed in connection with the questioned transactions.

101. Under the statute, the transfer was made with intent both actual and constructive to

hinder, delay and defraud, or without receiving reasonably equivalent value.


WHEREFORE, the plaintiff seeks the following relief:

1)  Employment Screening Profiles, Inc.

2)  Worldwide Information, Inc.


## Count V
## Civil Conspiracy
**(Against Trustee, LPHCAP, National Union Fire Insurance Company, Oakridge Insurance Services, Chartis, Inc. HenryE. Knoblock, III, John Nachef, and Steve Russo individually and as managing members of LPHCAP, Brain McHugh, Kenneth Kaiser, Geoffrey T. Chalmers, Blake J. GodBout)**

102. Green repeats and re-alleges the foregoing paragraphs, which are incorporated by

reference as if set forth fully herein.

103. The defendants were involved in a civil conspiracy to keep these assets away from

Green.

104. The conspiracy is a combination of the two or more defendants to accomplish by

concerted action the unlawful purpose of the fraudulent transfers or lawful

reorganization plan by unlawful or oppressive means against Green.

105. The principal element of the civil conspiracy is the agreement between the two or more

defendants to inflict a wrong against or inflict injury upon Green.

106. The gist of the civil conspiracy action is not the civil conspiracy charged, but the

damages Green has suffered due to the wrongful acts of the defendants.

107. The civil conspiracy is not a separate and independent tort in and of itself, but, rather, it

is dependent on the existence of the underlying misconduct cited above.

WHEREFORE, the plaintiff seeks the following relief:

1) Actual damages in the amount of 1 million+ dollars.

2) Putative damages in an amount to be determined at trial.

## Count VI
### Accounting Malpractice and Director and Officer negligence or Breach of Fiduciary Duty
(Against Livingston & Haynes, P.C., Kevin F. Howley, William W. Wood, John
Latorella, James Fields, Geoffrey T. Chalmers, Sonia Bejjani, Ralph Caruso, David
Skerrett, Patrick Murphy, and Christian Williamson)

108. Green repeats and re-alleges the foregoing paragraphs, which are incorporated by

reference as if set forth fully herein

109. Beginning as early as 2005 and 2006, the Debtor began receiving complaints regarding

the manner in which it was achieving certain earnings.

110. Specifically, the Debtor contracted with Livingston & Haynes, P.C. ("L&H"), Kevin F.

Howley, CPA and William W. Wood, CPA of L&H in connection year-end audits and

quarterly intern review of the financial statements.

111. Howley served as Engagement Partner and Wood served as the Concurring Partner on

the Engagement.

112. On October 14, 2010 the SEC filed a complaint against LocatePLUS alleging, in part,
that LocatePLUS' former CEO and CEO fraudly inflated the company's publicity-
reported revenue in its periodic flings with the SEC for at least fiscal years of 2005 and
2006.

113. The complaint alleges that, as part of the LocatePLUS fraud, its CEO and CFO created a
fictitious customer called Omni Data Services, Inc. (Omni Data") and that LocatePLUS
them improperly recognized revenue from Omni Data.

114. The improper Omni data revenue was included in LocatePLUS' financial statements that
were part of quarterly and annual reports for fiscal years 2005 and 2006 and were
included in filings with the SEC.

115. In total, LocatePLUS falsely reported more than $6 million from Omni Data for fiscal
years 2005 and 2006, representing over 25% of LocatePLUS total revenue for those two
years.

116. During the course of L&H's 2005 and 2006 year-end audits of LocatePLUS, L&H,
Howley and Wood failed to include procedures designed to provide reasonable
assurance of detecting illegal acts that would have a direct and material effect on the
determination of financial statements amounts and thus each of the violated Section
10A(a)(1) of the Exchange Act.

117. During the course of L&H's 2005 and 2006 year-end audits of LocatePLUS, L&H,
Howely and Wood became aware of multiple allegations of illegal acts at LocatePLUS,
including allegations that Omni Data revenue was fictions yet failed to determine
whether it was likely that an illegal act had occurred.

118. Based on this conduct each of them violated Section 10 A (b)(1) of the Exchange Act.

119. During the course of L&H's 2005 and 2006 year-end audits of LocatePLUS, L&H, and
Howely became aware of red flags indicating that the Omni Data Revenue was fictitious
yet they failed to ensure that very risk area was properly audited.

120. Moreover, L&H and Howely failed to plan audits adequately test the Omni Data
revenue, obtain sufficient competent evidential matter to serve as a basis for L&H's
audit reports, exercise due professional care, apply skepticism, and properly assess the
risk of material risk misstatement due to fraud.

121. Wood was also aware of red flags indicating that Omni Data revenue may be fictitious
and that these matters were unresolved, yet he concurred with the issuance of audit
reports containing unqualified opinions on LocatePLUS' 2005 and 2006 financial
statements.

122. Based on the L&H, Howely and Woods highly unreasonable conduct, they have engaged
in improper Professional conduct within the meaning of Rule 102(e)(ii). Kevin F.
Howley, age 51 and a resident of Wrentham, Massachusetts, is a certified Public
Accountant ("CPA") licensed in Massachusetts, California and Vermont.

123. Howley served as the engagement partner on LocatePLUS' audits and interim reviews
for years ended 2005 and 2006.

124. Howley generally serves as the engagement partner for all of L&H's public company
clients.

125. Howley is an approximately two percent shareholder in L&H.

126. William W. Wood Jr. age 65 and a resident of Townsend, Massachusetts, is a CPA
licensed in Massachusetts.

127. Wood served as the concurring partner on the LocatePLUS audits and interim for years 2005 and 2006.

128. Wood also serves as L&H's technical partner and as concurring partner for all of L&H's SEC clients.

129. Wood is approximately ten percent shareholder in L&H.

130. Livingston and Hynes, P.C. is an accounting and auditing firm registered with the Public company Accounting Oversight Board (the "PCAOB") based in Wellesley, Massachusetts.

131. The firm reviews for the fiscal years ended 2005 and 2006.

132. The auditors actively participated in concealing the activities that lead to the company's failure.

133. The auditor's error was one of omission. The auditors failed to detect this damaging practice that, had it been discovered in time, could have been corrected.

134. The audit failures caused the company's demise, and had the auditors done a better job the company would not have made these bad business decisions.

135. The officers and directors reckless or fraudulent conduct drove the company into bankruptcy and but for the auditor's negligence, the company's officers and directors would not have mismanaged or otherwise damaged the company.

136. L&H has been subject to an SEC enforcement action in connection with the accounting work it did for the Debtors in the 2006 and 2007 audit years, based on the failure of L&H to detect certain fraudulent activities by Debtor's former officers, John Latorella and James Fields.

137. The Director and Officers negligence or breach of fiduciary duty claims are based on the

apparent failure of these Directors and Officers to detect the fraudulent activities of

Latoralla and filed and the issuance of 25 million share to pay off the outstanding note to

YA Global and failure to do so with the shares and instead acquired Employment

Screening Profiles Inc.

WHEREFORE, the plaintiff seeks the following relief:

1) Actual damages in the amount of $100,000+

2) Putative damages in an amount to determined at trial.

## **Prayer for Relief**

WHEREFORE, by reason of foregoing, Green respectfully demands entry of judgment as

follows:

1. On Count I:

    a.  Entering a judgment that the Trustee, CRG Partners, and Brown Rudnick
        mismanaged the estates Vacating the order authorizing the employment of
        Stephen S. Gray as Trustee and his professionals,

    b.  Remove Stephen S. Gray as trustee and his professionals and deny them any
        commission or compensation.

    c.  Termination of the plan of Reorganization Co-sponsored by the Trustee/Estate on
        behalf of LPHCAP.

    d.  Granting sale of the DataPhant assets to Green at his bid amount.

    e.  Ordering the Trustee/estate to cure Wells Notice issued by the SEC.

2. On Count II:

    a. Entering a judgment against the Trustee/Estate granting Injunctive relief from the restraining order.

    b. Costs awarded against the estate, National Union Fire Insurance Company, and Chartis, Inc. for bringing this action and all other efforts in these matters.

    c. Greens Expenses charged to the estate, National Union Fire Insurance Company for all efforts in these matters.

3. On Count III:

    a. A declaration from the court that the trustee holds the funds securing the Debenture for the benefit of Green

    b. A declaration from the court Employment Screening Profiles, Inc is held. for the benefit of Green

    c. A declaration from the court Worldwide Information, Inc. is held for the benefit of Green

    d. Entering a judgment finding that the Trustee has no authority to access, use, or surcharge the funds;

    e. Enter a judgment finding that any breakup fee to Inflections, LLC using the funds is denied.

    f. Enter a judgment finding that Gulabtech is entitled to $2.8 million of the funds as part of the settlement agreement with Green and/or the Trustee.

4. On Count IV:

    a. Enter a judgment against LPHCAP, Henry E. Knoblock, III, John Nachef, and

Steven Russo individually and as managing members of LPHCAP awarding

Employment Screening Profiles, Inc. to Green.

    b.  Enter a Judgment against LPHCAP, Henry E. Knoblock, III, John Nachef, and

Steven Russo individually and as managing members of LPHCAP awarding

Worldwide Information, Inc. to Green.

5.  On Count V:

    a.  Entering Judgment for actual damages in the amount of $100,000+ against

Trustee, LPHCAP, National Union Fire Insurance Company, Oakridge Insurance

Services, Chartis, Inc. Henry E. Knoblock, III, John Nachef, and Steven Russo

individually and as managing members of LPHCAP, Brain McHugh, Kenneth

Kaiser, Geoffrey T. Chalmers, and Blake J. GodBout.

    b.  Entering judgment for Putative damages in an amount to be determined at trial

against Trustee, LPHCAP, National Union Fire Insurance Company, Oakridge

Insurance Services, Chartis, Inc. Henry E. Knoblock, III, John Nachef, and

Steven Russo individually and as managing members of LPHCAP, Brain

McHugh, Kenneth Kaiser, Geoffrey T. Chalmers, and Blake J. GodBout.

6.  On Count VI:

    a.  Entering judgment for actual damages in the amount of $100,000+ against

Livingston & Haynes, Kevin F. Howley, and William W. Wood for accounting

malpractice.

    b.  Entering judgment for actual damages in the amount of $100,000+ against John

Latoralla, James Fields, Sonia Bejjani, Ralph Caruso, David Skerrett, Patrick

Murphy, and Christian Williamson.

c.   Entering judgment for Putative damages in an amount to determined at trial

against Livingston & Haynes, P.C., Kevin F. Howley, William W. Wood, John

Latoralla, James Fields, Sonia Bejjani, Ralph Caruso, David Skerrett, Patrick

Murphy, and Christian Williamson

Dated: March 19, 2012

_Carl Green_

Carl Green
601 Carlson Parkway
Suite 1050
Minnetonka, MN 55305
218-464-8686 (cell)
952-449-5275 (office)

MAR20'12 AM10:54 USB

## Certificate of Service

The undersigned certifies that on March 19, 2012, the Complaint by Carl Green was mailed to the Clerk of Court to be secured by operation of the U.S. Bankruptcy Court's CM/ECF filing system upon the following:

Assistant U.S. Trustee
John Fitzgerald
Office of the United States Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Square 10th Floor, Suite 1000
Boston, MA 02109
USTPRegion01.BO.ECF@USDOJ.Gov

Stephen S. Gray
CRG Partners Group, LLC
2 Atlantic Avenue
Boston, MA 92110
Stephen.gray@orgpartners.com

Harold B. Murphy, Esq.
Natialie B. Sawyer, Esq.
Murphy & King, P.C.
One Beacon Street, 21st Floor
Boston, MA 02018
Bankruptcy@Murphyking.com
nbs@murphyking.com

Daniel C. Cohn, Esq.
Micheal P. Connelly, Esq.
Murtha Cullina, LLP
99 High Street
Boston, MNA 02110
dcohn@murthalaw.com
Mcconnolly@murthalaw.com

Paul R.C. Bachloll, Esq.
Office of the United States, Trustee.
J.W. McCormack Post Office & Courthouse
5 Post Office Sq. 10th Floor, Suite 1000
Boston, MA 02109
Paula.bachtell@usdoj.gov

William r. Baldiga, Esq.
Angelo Thalassinos, Esq.
Brown Rudnick, LLP
One Financial Cener
Boston, MA 02111
Wbaldiga@brownnudnick.com

MAR20'12 AM10:54 USB

Lawerendce R. Plavnik, Esq.
McLane, Graf, Ravlerson & Middleton
300 Trade Center, Suite 6400
Wohurn, MA 01801
lawrence.plavnick@mclane.com

Brett D. Fallon, Esq.
Morris James, LLP
500 Delaware Avenue, Suite 1500
PO box 2306
Wilmington, DE 10899-2306
bfallon@morrisjames.com

S/Green
Carl Green

MAR20'12 AM10:54 USB